CENTURY ELECTRIC CO. et al. v. WAGNER ELECTRIC MFG. CO. et al.

(Circuit Court of Appeals, Eighth Circuit. November 21, 1911.)

No. 3,419.

1. PATENTS (§ 328*)—ANTICIPATION—ELECTRIC MOTOR.
   The Gutmann patents, No. 458,162 and No. 530,176, for alternating current electric motors, are void for anticipation in the prior art.

2. PATENTS (§ 328*)—INFRINGEMENT—ELECTRIC MOTOR.
   The Gutmann patent, No. 530,177, for a method of transforming electrical into mechanical energy, *held* not infringed.

Appeal from the Circuit Court of the United States for the Eastern District of Missouri.

Suit in equity by the Wagner Electric Manufacturing Company and others against the Century Electric Company and Edwin S. Pillsbury. Decree for complainants, and defendants appeal. Reversed.

Thomas F. Sheridan (Frederick W. Lehmann, Carl A. Richmond, and Roy M. Eilers, on the brief), for appellants.

A. C. Fowler, for appellees.

Before SANBORN and HOOK, Circuit Judges, and W. H. MUNGER, District Judge.

HOOK, Circuit Judge. This is a suit by the Wagner Electric Manufacturing Company and others against the Century Electric Company and Edwin S. Pillsbury for the infringement of three letters patent issued to Ludwig Gutmann for alternating-current electric motors. Complainants claim under the patentee, Gutmann. Upon final hearing the complainants secured a decree, and the defendants appealed. The three patents to Gutmann are No. 458,162, August 25, 1891; No. 530,176, December 4, 1894; and No. 530,177, December 4, 1894.

[1] As to patent No. 458,162, claim 8 is the only one involved. It is as follows:

"8. In an alternating-current motor, field-magnet coils consisting of such a length of conductor as will produce a counter-pressure or counter electromotive force equal or nearly equal to the pressure in the main line, the brushes of the motor-armature being supposed to be removed."

This claim merely expresses what was before generally known and practiced in the art. It was common in motors of various kinds to make the applied and counter potential equal or nearly equal to each other by the method Gutmann pointed out. No particular length of conductor to produce the counter-electric motive force was specified by him, and, if it had been, he could not have patented it because the principle was known and the precise length of coil essential varied with the circumstances, and for any particular machine had to be determined by experimentation. If there was not enough resistance for the voltage sent into the machine, the machine would overheat and possibly burn out; if too much resistance, the current could not be forced through. This was primary information when Gutmann

entered the field.    More than this, Gutmann's device was anticipated in the patent to Stanley, No. 591,301, October 5, 1897, which was applied for October 23, 1888, before Gutmann made application.    Stanley said in his specifications:

"When an alternating-electric current is sent through the coils $A$, if the circuit connections of the coil $B$ are interrupted the counter electro-motive force developed in the coil $A$ will tend to oppose the flow of current through that coil, and by suitably proportioning the coils practically no current will flow."

Stanley's "coils $A$" respond to the "field-magnet coils" in Gutmann's claim 8, and the interruption of the circuit connections of coil $B$ by Stanley performs the same function as the removal of the brushes of the motor armature by Gutmann.

In Gutmann's second patent, No. 530,176, the claims involved are:

"1. The method herein described of operating an alternating or pulsatory current motor which consist in magnetizing one of the elements (the field) by a single energizing circuit and producing a continuously progressive shifting of the magnetic polarities in the other motor element (the armature) by developing currents differing in phase and current quantity in different closed circuits of a winding of said element.

"2. The herein described method of transforming electrical energy into mechanical, consisting in energizing one of the motor elements (the field) normally by a single phase alternating-electric current, and progressively changing the position of the magnetic poles of the other element (the armature) by periodic currents differing in phase.

"3. The method herein described of producing mechanical motion from electrical energy, consisting in establishing a field of rapidly varying intensity by a single phase alternating or pulsatory current, and producing in a motor element whose winding is exposed to said field of force polyphase currents in successive closed circuits of said winding.

"4. The method herein described of producing mechanical motion from electrical energy, consisting in establishing by means of a single phase alternating current, a field of rapidly varying intensity for one of the elements of a motor, and producing polyphase currents in interconnected closed windings, and thereby developing a rotary magnetic field for the second element, as herein set forth."

Briefly stated, these claims contemplate the production of mechanical motion from electrical energy by a single phase alternating current in the field magnet inducing polyphase currents in the armature to be accomplished by close circuiting the wound coils on the latter, and, by the fourth claim, but not by the first three, by having the closed windings interconnected, thus producing a continuously progressive shifting of the magnetism in the armature or a rotation of the magnetic poles.    It is contended for the patent that Gutmann succeeded in transferring the polyphase or split phase currents from the field magnet, as in the old motors, to the armature.    But we find this same arrangement in the prior patent to Elihu Thomson, No. 407,-844, July 30, 1889.    This patent describes an alternating electric current motor having a single phase current in the energizing field and a set of closed coils on an armature inductively related thereto. Thomson points out clearly the polar shifting or rotation and the reason for it, and also says "the coils on the armature or the closed coils may either be closed singly or together in series or in other ways."    There is in this patent to Thomson everything that is claimed

by Gutmann. It is true that the former does not say in so many words, as the fact was, that the currents in his armature were polyphase. Gutmann does, but, if the winding of an armature in several closed circuits will produce currents of different phase when in inductive relation to a magnetic field energized by a single phase alternating current, merely saying so is not new and patentable as against a prior structure similarly arranged.

[2] The first claim of Gutmann's third patent, which alone is involved, is:

"1. The method of transforming electrical into mechanical energy, which consists in bringing the rotatable element of a motor to the critical speed through the influence of a uniphase alternating current applied to one or both of the motor elements, and then maintain the rotation by producing in said movable element currents of displaced phase, and subjecting the conductors carrying said displaced currents to the influence of a magnetic field, substantially as described."

As explained by the drawings and the specifications this claim relates to a duplex motor, the rotatable element of which is brought to speed by a single phase alternating current applied either to the field or armature or both, thereby producing currents of displaced phase which are in turn conducted to a second magnetic field—all for the purpose of providing a self-starting alternating-current motor. Defendants' motor is nothing like this. It is a single-phase alternating motor with one field and one armature. It is contended, however, that claim 1 is not confined to the precise arrangement set forth in the specifications which show a second magnetic field. We think that in this particular the claim itself is in harmony with the specifications, in that a second field is contemplated; but, if this were not so, then in so far as the claim is broader it was anticipated in the prior art. If there are not two magnetic fields in the Gutmann method as the patent indicates, but only one field twice referred to as performing functions, there is nothing new when compared with a number of prior patents. It will suffice to cite that to Stanley No. 439,042, October 21, 1890.

There are many claims of anticipation of the three Gutmann patents and quite a number of other defenses. Those referred to are sufficient for the disposition of the case, without mentioning or considering the others.

The decree is reversed, and the cause is remanded for a decree dismissing complainants' bill.